1  STEVEN T. GUBNER - Bar No. 156593
   RICHARD D. BURSTEIN - Bar No. 56661
2  TALIN KESHISHIAN - Bar No. 201830
   BRUTZKUS GUBNER
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone:  (818) 827-9000
   Facsimile:  (818) 827-9099
5  Email:     sgubner@bg.law
              tkeshishian@bg.law
6
   Attorneys for David Seror, Chapter 7 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11
   In re                                Case No. 1:18-bk-10071-VK
12
   LOST COAST RANCH INC.,               Chapter 7
13
                    Debtor.            **CHAPTER 7 TRUSTEE'S OPPOSITION TO
14                                      DEBTOR'S MOTION TO DISMISS CASE;
                                        DECLARATION OF DAVID SEROR IN
15                                      SUPPORT THEREOF**

16                                      **Date:**  May 3, 2018
                                        **Time:**  2:00 p.m.
17                                      **Place:** Courtroom 301
                                               21041 Burbank Boulevard
18                                             Woodland Hills, CA  91367

19

20

21 **TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY**

22 **JUDGE, THE DEBTOR AND ITS COUNSEL, THE OFFICE OF THE UNITED STATES**

23 **TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

24         David Seror, the duly appointed and acting Chapter 7 Trustee ("Trustee") of the above-

25 referenced bankruptcy estate ("Estate"), by and through his counsel of record, hereby opposes

26 ("Opposition") the Motion ("Motion") for Order Dismissing Case filed by debtor, Lost Coast Ranch, Inc.

27 ("Debtor") on April 9, 2018 [Docket No. 27].  The Trustee's Declaration is attached hereto in support of

28 the Opposition ("Decl. of Trustee").

                                        1

The Motion seeks to dismiss the case that Debtor admittedly filed to "stop an impending foreclosure" so that it may now facilitate and proceed with the sale of the Estate's "only asset", the real property located at 26000 Mattole Road, Petrolia, CA 95536 ("Property").  See Motion at p. 2 ll:1-3. Trustee opposes the relief sought in the Motion and respectfully represents as follows:

**1**. Debtor's Motion is premature.  While the Motion repeatedly asserts that all the secured creditors have "unanimously agreed" to the dismissal of the case in order to facilitate the sale of Estate Property and that there are "no unsecured creditors" here, the general claims bar date of May 22, 2018 and the government claims bar date of July 9, 2018, have not yet passed.  See Motion at p. 2, and p. 6 ll:2 and ll:5.  Therefore, despite Debtor's contention that it has no unsecured creditors, it is at this time still unknown if there will be unsecured or governmental claimants in this case.  Only after the claims bar dates have passed will the Trustee be able to fully ascertain the creditor body in the case and determine how best to administer the bankruptcy and its assets and whether a dismissal of the case and on what terms, if any, should be considered.  As shown in the accompanying Declaration of the Trustee, it was not until April 13, 2018, that the Trustee began to receive through the Debtor's pre-petition real estate broker details of the sale mentioned in the Motion.  Under these circumstances, even in the absence of a still open claims period, it would be premature to assess a dismissal of the case.

**2**. The Motion provides no evidence to support Debtor's contention that all trust deed holders on the Property and secured creditors of the Debtor "have unanimously agreed" to the sale of the Property and are in favor of the dismissal of the case.  The Motion attaches no declaration of any kind to support the assertion that the secured creditors join in or endorse Debtor's Motion.  See Motion p. 2 ll:11-12. The Trustee has no separate basis to assess the accuracy of this unsupported assertion in the Motion.  See generally the Decl. of Trustee.

**3**. The Debtor has repeatedly failed to appear at any of the 341(a) meetings that have been continued since February 16, 2018.  See Trustee's Declaration.  Until just a few days ago, the Debtor had not only failed to appear at scheduled 341(a) meetings but had entirely failed to cooperate with the Trustee in providing information concerning the contemplated sale of the Property. See Declaration of Trustee, paragraph 2.

1940691

**4**. <u>The information supplied by Debtor to date is still insufficient</u>. The Trustee's efforts to gain information from the Debtor included a call on January 30, 2018 with the Debtor's pre-petition broker Jim Redd. On January 31, 2018 the Trustee spoke with Joseph Beauchamp, Debtor's principal. During both calls, the Trustee requested documentation about the status of the property but none was provided. The Trustee further sought information by email communication with Mr.Redd on February 1, 2018 and a call with Debtor's counsel on the same date. Again, nothing was forthcoming. See the accompanying Declaration of Trustee, paragraph 3.

After further outreach by the Trustee's counsel, Debtor's pre-petition real estate broker on April 13, 2018, submitted information to Trustee's counsel about the status of the real property asset which is the only scheduled asset of the Debtor's case, including providing a copy of an apparent agreement for purchase of the Property dated post-petition on January 22, 2018 ("Purchase Agreement") and a copy of the preliminary title report on the Property. <u>See</u> Decl. of Trustee, paragraph 4 and 5 . While the Purchase Agreement has now provided the Trustee with some information, it is still unclear and missing information on other points, and is of course post petition. Specifically, among other things, it is unclear from the Purchase Agreement the status of the contingencies, the loan balances due to the secured on the Property and where the "all-cash" funds for purchase of the Property are currently held. The Trustee has sought this additional information and when it was provided it became apparent that the whole transaction was inchoate as of the petition date and still unformed. <u>See</u> Decl. of Trustee, paragraphs 4, 5 and 6.

## I.    <u>FACTUAL BACKGROUND</u>

On  January 9, 2018 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the bankruptcy case ("Case"). The Trustee is the duly appointed, acting and permanent Chapter 7 Trustee of the Estate in the Case. The Motion states that the Debtor filed its first bankruptcy a month earlier on December 5, 2017, Case No 17-24939, and the instant case to "stop an impending foreclosure" of the only asset in the case, the Property. <u>See</u> Motion p. 2 and p. 5 ll: 23-24. The initial 341(a) meeting was schedule for February 16, 2018. The meeting was thereafter continued to February 26, 2018 and April 2, 2018. The Debtor failed to appear at any of the 341(a) meetings. The next 341(a) meeting is currently

1940691

scheduled for April 20, 2018.  See Decl. of Trustee, paragraph 2.  The general claims bar date in the

Case is set for May 22, 2018 and government claims bar date is July 9, 2018.

## II.    ARGUMENT

### A.    The Motion is Premature as the Claims Bar Date(s) Have Not Yet Passed

The Motion states that as reflected in the Debtor's schedules, there are no unsecured creditors in

this case and that all secured creditors have 'unanimously agreed' to the proposed sale of the Property

and the dismissal of the case. See Motion at p. 2, and p. 6 ll:2 and ll:5.  While the Debtor makes the

assertion that it has no unsecured creditors, the claims bar dates in the case have not yet passed.  The

general claims bar date is set for May 22, 2018 and the deadline for government claims July 9. 2018.

Accordingly, the Motion is premature in that neither of the claims bar date has passed and it is yet

unknown if there will be no unsecured creditors in the case.  Fed. R. of Bank. Proc. 3002.

Only after the claims bar dates have passed will the Trustee be able to fully ascertain the creditor

body in the case and determine how to proceed to administer the case and its assets and whether

dismissal and on what terms if any is appropriate and how he should then address a dismissal motion.

### B.    The Motion Is Not Supported by Evidence of Any Secured Claimants Approving or Agreeing to the Proposed Sale of the Property and the Dismissal of the Case

The Motion states that all the secured creditors of the Estate are ready to proceed with a pending

sale. The Motion however provides no supporting evidence or declaration of any kind to support the

contention that "all secureds are ready to proceed" with the alleged sale of the Property.  In fact, the

Trustee believes that not all secured creditors support the dismissal of the case.  See Decl. of Trustee,

paragraph 7.

After weeks of repeated attempts by the Trustee as detailed above, on April 12, Trustee's counsel

initiated further contact with the Debtor's broker's requesting again that the Trustee be provided with

copies of all documents pertaining to any marketing or sale activity concerning the Property.  Trustee's

counsel reminded the brokers that upon the filing of a bankruptcy petition, the Property became an asset

of the bankruptcy estate for the Trustee to administer and that any broker seeking to sell the Property on

behalf of the Estate must be approved for employment as the Trustee's broker by the bankruptcy court.

See **Exhibits 1** and **2** attached to the Decl. of Trustee.

4

1940691

On April 13, 2018, Debtor's pre-petition broker, Jim Redd of The Ranch Specialist, provided Trustee's counsel with a copy of the purported Purchase Agreement and a preliminary title report on the Property. The Trustee has not had an opportunity to fully evaluate these documents or ascertain the status of the pending Purchase Agreement. From Trustee's initial review of the Purchase Agreement there does not appear to be a pre-petition executed deed. In fact, the purported Purchase Agreement is dated post petition. See Decl. of Trustee, **Exhibit 3**.

Further, while the Purchase Agreement has provided the Trustee with some, delayed information, it is still unclear on other points. Specifically, among other things, it is unclear from the Purchase Agreement where the "all-cash" funds for purchase of the Property are currently held, what is the status of the contingencies, and the amounts of loan balances due to the secured on the Property. In response to the Trustee's counsel's follow up requests, Mr. Redd's response disclosed that as of the Petition Date the deal was inchoate and still uncertain. See Decl. of Trustee, **Exhibit 4**.

**C.       The Property is Property of the Estate**

As of the Petition Date there does not appear to have been an executed deed on the Property that is property of the Estate. 11 U.S.C. § 541. The purported Purchase Agreement itself is dated post-petition on January 25, 2018. It must be noted that while the Trustee has not yet determined how he will proceed in relation to the proposed sale of the Property, it is in fact the Trustee who is required to administer property that is the property of the Estate as of the commencement of the case. 11 U.S.C §704. The Trustee must be allowed sufficient time to investigate and analyze the property situation to allow him to properly discharge his obligations.

**D.       The Debtor Cannot Be Permitted to Misuse the Bankruptcy Codes for Its Goals Without Consequences**

The Motion confirms that in fact the Debtor filed for bankruptcy protection on two separate occasions to prevent foreclosure on the Property, a 780 acre parcel, which is the only scheduled asset of the Estate with an approximate value of $10M and claimed equity beyond its liens. The Debtor chose to exercise its right to file a bankruptcy petition, two separate times, first in December 2017 and again on January 9, 2018, to avoid a foreclosure on the Property. The Debtor then failed to appear at three previously scheduled 341(a) meetings and further failed to cooperate in providing information to the

1940691

Trustee, leaving the Trustee without any information of any kind until only a few days ago and just before the filing of this Opposition.  The Trustee will need additional time to review the information now supplied concerning the pending sale of the Property.  What he has learned so far is just cause for concern that the Debtor has ignored required procedures post petition in seeking to dispose of Estate assets.

While the Bankruptcy Code was of course enacted to permit debtors to seek certain protections, including those under 11 U.S.C § 362 which provide debtors with the automatic stay provisions, the Code was not enacted to be the free tool for debtors to employ at their whim without consequences.  Here, the Debtor is seeking to dismiss the case it originally filed, apparently now feeling that it has attained its goals.  The Debtor must now however abide by the procedures established by the Code to ensure sound case administration and it appears to have failed to do so.  This is no longer subject to the unilateral whim of the Debtor.

## III.    CONCLUSION

For all the foregoing reasons, the Trustee respectfully requests that the Debtor's Motion be denied.

DATED:  April 18, 2018                        BRUTZKUS GUBNER


By:____/s/ Talin Keshishian_____
        Talin Keshishian
        Attorneys for David Seror, Chapter 7 Trustee

1940691

6

## <u>DECLARATION OF DAVID SEROR</u>

I, David Seror, hereby declare that the following is true and correct and that if called to testify, I could do so competently as to the following:

1.      I am the Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of debtor, Lost Coast Ranch, Inc. (the "Debtor"), and I am familiar with the opposition ("Opposition") to the Motion ("Motion") for Order Dismissing Case filed by debtor, Lost Coast Ranch, Inc. ("Debtor") on April 9, 2018 [Docket No. 27] filed by my counsel and I make this Declaration in support of the Opposition.

2.      The initial 341(a) meeting was schedule for February 16, 2018.  The meeting was thereafter continued to February 26, 2018 and April 2, 2018.  The Debtor failed to appear at any of the 341(a) meetings.  The next 341(a) meeting is currently scheduled for April 20, 2018.  The general claims bar date in the Case is set for May 22, 2018 and government claims bar date is July 9, 2018.

3.      My efforts to obtain information from the Debtor include also the following: On January 30, 2018 I spoke with broker Jim Redd and discussed the bankruptcy filing. He claimed the property had already been sold, but backed off when I asked him who had the signed deed and where the money was. While he promised to provide me with all documents, he did not do so. I confirmed my conversation with Mr. Redd by an email on February 1, 2018, a true and correct copy of which is attached hereto as **Exhibit 1**. On January 31, 2018 I spoke with Joseph Beauchamp, principal of the Debtor. Mr. Beauchamp said the property was sold, and I told him that my information was that it was not. I again requested documentation, but none was provided. On February 1, 2018, I spoke with Debtor's counsel and requested information from him. He too promised to send it, and yet nothing was provided. Despite my repeated efforts to obtain information from Debtor's counsel, I was not given any information.

4.      My counsel initiated further contact with the Debtor's broker requesting again that I be provided with copies of all documents pertaining to any marketing or sale activity concerning the Property.  My counsel reminded the brokers that upon the filing of a bankruptcy petition, the Property became an asset of the bankruptcy estate for the trustee to administer and that any broker seeking to sell

1940691

the Property of behalf of the Estate must be approved for employment as the Estate's broker by the

bankruptcy court.    A true and correct copy of said email communication is attached hereto as **Exhibit 2**.

5.        On April 13, 2018, after these renewed requests from my counsel, Debtor's pre-petition

real estate broker submitted information to my counsel about the status of the real property asset which is

the only scheduled asset of the Debtor's case, including a copy of an apparent agreement for purchase of

the Property dated post-petition on January 22, 2018 ("Purchase Agreement") and a copy of the

preliminary title report on the Property.    A true and correct copy of the Purchase Agreement and

preliminary title report are attached hereto as **Exhibit 3**.    While the Purchase Agreement now provides

me with some information, it is still unclear and missing information on other points.    What is clear

however is that the Purchase Agreement is dated with the post-petition date of January 22, 2018.

Specifically, among other things, it is unclear from the Purchase Agreement what is the status of the

contingencies, the loan balances due to the secured on the Property and where the "all-cash" funds for

purchase of the Property are currently held.    My counsel has sought this additional information and the

response he received from the debtor's pre petition broker makes clear that as of the Petition Date the

whole sale process was inchoate and even now uncertain. A copy of that email correspondence is

attached hereto as **Exhibit 4**.

6.        The general claims bar date is set for May 22, 2018 and the deadline for government

claims July 9. 2018.    Accordingly, the Motion is premature in that neither of the claims bar date has

passed and it is yet unclear that there will be no unsecured creditors in the case.    Fed. R. of Bank. Proc.

3002.    Only <u>after</u> the claims bar dates have passed will I then be able to fully ascertain the creditor body

in the case and determine how to proceed to administer the case and its assets and whether dismissal and

on what terms if any is appropriate and how I should then address a dismissal motion.    As trustee, I am

required to administer property that is the property of the Estate as of the commencement of the case.    11

U.S.C §704.    I must therefore be allowed sufficient time to investigate and analyze the property situation

to allow me to properly discharge my obligations.    What I am now learning causes me concern that the

Debtor has completely disregarded bankruptcy procedures and may have attempted to dispose of the

property by a post petition transfer.

1940691

7.      While the Motion asserts that all secured creditors are in agreement with the proposed sale of the Property and the dismissal of the case, the Motion itself provides no supporting evidence or declaration of any kind to support the contention that "all secureds are ready to proceed" with the alleged sale of the Property.  In fact, I believe that not all secured creditors support the dismissal of the case.  Shortly after the Debtor's filing of the Motion, my counsel was contacted by Tom Mouzes of Boutin Jones, Inc.  Mr. Mouzes, named counsel for claimants on proofs of claim #2 and #3, inquired of my counsel concerning the Debtor's Motion and specifically the statement in the Debtor's Motion that secured creditors were all in agreement, stating that he was unaware that the statement and representation of the Debtor were true.  I understand that counsel informed my counsel that he would check on this item and get back to him.  As of the date of this Opposition, neither I nor my counsel have heard further from Mr. Mouzes on this point.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of April, 2018, in Woodland Hills, California.

_____
David Seror

9

1940691

**Richard Burstein**

| | |
|---|---|
| **From:** | David Seror |
| **Sent:** | Tuesday, April 17, 2018 11:04 AM |
| **To:** | Richard Burstein; Talin Keshishian |
| **Subject:** | FW: Lost Coast Ranch, Inc., Case No. 1:18-bk-10071-VK |

**From:** David Seror
**Sent:** Thursday, February 1, 2018 10:03 AM
**To:** jim@ranchagent.com
**Subject:** Lost Coast Ranch, Inc., Case No. 1:18-bk-10071-VK

Mr. Redd:

This email confirms our discussion of Tuesday afternoon.  I advised you that on January 9, 2018 Lost Coast Ranch, Inc., filed a Chapter 7 bankruptcy proceeding under the above case number, and I am the duly appointed Chapter 7 Trustee.  The real property located at 26000 Mattole Road, Ferndale, CA 95536 is property of this bankruptcy estate, and as trustee, I have the sole authority to administer, sell or liquidate this property.  In addition, upon the filing of this case, an automatic stay is in effect, which, among other things, prohibits anyone from doing anything to obtain possession of property of the estate or to exercise control over property of the Estate.

In our call, you promised to send me all documents in your possession concerning this property.  I have not yet received anything from you.

I understand there is a pending offer for the sale of this property.  Again, I am the only person with the authority to sell the property, and any sale must be approved by the bankruptcy court.  I cannot consider any potential sale unless I have all the documents and have an understanding of the price, terms and conditions of any sale.

I have advised Orange Coast Title of the bankruptcy filing.

I look forward to hearing from you.

1

EXHIBIT "1"

**Talin Keshishian**

| | |
|---|---|
| **From:** | Richard Burstein |
| **Sent:** | Thursday, April 12, 2018 12:10 PM |
| **To:** | jim@ranchagent.com; kevin@ranchagent.com |
| **Cc:** | Talin Keshishian |
| **Subject:** | Lost Coast Ranch - status request |

Dear Jim and Kevin:

Our office represents David Seror, chapter 7 trustee for the Lost Coast Ranch bankruptcy estate, United States Bankruptcy Court, Central District of California, San Fernando Valley Division case number 18-10071.

The trustee has told us that he has unsuccessfully tried to reach you to find out the status of the pre petition marketing of the ranch by you.

Would you please promptly provide to me copies of all documents pertaining to any marketing or sale activity concerning the ranch that you have? As you undoubtedly are aware, upon the filing of the petition, the property becomes an asset of the bankruptcy estate for the trustee to administer and any broker seeking to sell the property on behalf of the trustee must be approved for employment as the trustee's broker by the bankruptcy court.

The debtor has filed a motion to dismiss the bankruptcy case which contains statements about the status of the property. Your response to this request is necessary for us to analyze and respond to that motion and to understand your role with regard to the property.

Thank you for your anticipated prompt courtesy.

Richard Burstein

1
EXHIBIT "2"



**CALIFORNIA ASSOCIATION OF REALTORS®**

**RESIDENTIAL PURCHASE AGREEMENT
AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/15 )

**Date Prepared:** _01/22/2018_

**1. OFFER:**
   **A. THIS IS AN OFFER FROM** _____ *Ocean Ranch LPFN, LLC* _____ ("Buyer").
   **B. THE REAL PROPERTY** to be acquired is _____ *26000 Mattole Rd, Petrolia , CA 95536* _____, situated in
      _Petrolia_ (City), _Humboldt_ (County), California, _95536_ (Zip Code), Assessor's Parcel No. _104-261-007 +_ ("Property").
   **C. THE PURCHASE PRICE** offered is _Nine Million_
      Dollars $ _9,000,000.00_
   **D. CLOSE OF ESCROW** shall occur on ☒ _____ _January 26, 2018_ (date)(or ☐ _____ Days After Acceptance).
   **E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**
   **A. DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships"
      (C.A.R. Form AD).
   **B. CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _____ (Print Firm Name) is the agent of (check one):
      ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _____ *Madrone Realty* _____ (Print Firm Name) (if not the same as the
      Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
   **C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   **A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 2,257,349.00
      **(1)** Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      OR **(2)** ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check (or _____ )
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   **B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . . . . $ _____
      within _1_ Days After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   **C.** ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____) Days After Acceptance, Deliver to Seller such verification.
   **D. LOAN(S):**
      **(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
      This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of
      the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      **(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____) Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay for or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   **E. ADDITIONAL FINANCING TERMS:** _See attached addendum #1_
      _____
   **F. BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 6,742,651.00
      to be deposited with Escrow Holder pursuant to Escrow Holder Instructions.
   **G. PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 9,000,000.00

Buyer's Initials ( _____ )( _____ )             Seller's Initials ( _ЛS_ )( _____ )

© 1991-2015, California Association of REALTORS®, Inc.

**RPA-CA REVISED 12/16 (PAGE 1 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542    Phone: (707)923-3119    Fax:    000 Mattole Rd
Somer Walton    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**EXHIBIT "3"**

12

Property Address: _26000 Mattole Rd, Petrolla , CA  95536_____ Date: _January 22, 2018_____

H.  **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within 3 (or ____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ([X] Verification attached.)

I.  **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or [X] is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.

J.  **LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ([ ] Letter attached.)
(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are **not contingencies** of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
Within 21 (or ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(4) [X] **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K.  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4.  **SALE OF BUYER'S PROPERTY:**
A.  This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
OR B.  [ ] This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

5.  **ADDENDA AND ADVISORIES:**
A.  **ADDENDA:**

| | | | |
|---|---|---|---|
| [ ] Addendum #_____ (C.A.R. Form ADM) | | | |
| [ ] Back Up Offer Addendum (C.A.R. Form BUO) | | [ ] Court Confirmation Addendum (C.A.R. Form CCA) | |
| [ ] Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | | | |
| [ ] Short Sale Addendum (C.A.R. Form SSA) | | [ ] Other | |

B.  **BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| [X] Buyer's Inspection Advisory (C.A.R. Form BIA) | |
| [ ] Probate Advisory (C.A.R. Form PA) | [ ] Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| [ ] Trust Advisory (C.A.R. Form TA) | [ ] REO Advisory (C.A.R. Form REO) |
| [ ] Short Sale Information and Advisory (C.A.R. Form SSIA) | [ ] Other |

6.  **OTHER TERMS:** _See attached addendum 1 for additional terms. Possession to be taken immediately. All personal items will be removed from the property by 5 pm Friday January 26th. Brokers compensation will be $100,0000 each. Other Apn's included in the sale 104-262-006/007/008/009, 104-271-001, 105-021-012. Property to be sold as is and in its present state and condition. Buyer to approve preliminary title report._____

7.  **ALLOCATION OF COSTS**
A.  **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report.
(1) [X] Buyer [X] Seller shall pay for a natural hazard zone disclosure report, including tax [ ] environmental [ ] Other: _50/50___
_____ prepared by _Disclosure Save Gold_____.
(2) [ ] Buyer [ ] Seller shall pay for the following Report _____
prepared by _____.
(3) [ ] Buyer [ ] Seller shall pay for the following Report _____
prepared by _____.

Buyer's Initials ( _____ )( _____ )                              Seller's Initials ( _JB_ )( _____ )

RPA-CA REVISED 12/15 (PAGE 2 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 2 OF 10)**

Property Address: <u>26000 Mattole Rd , Petrolia , CA  95536</u>                    Date: <u>January 22, 2018</u>

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**
(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.
(2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.
(ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.
(iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
(1) (a) ☒ Buyer ☒ Seller shall pay escrow fee <u>50/ 50</u>                                            .
(b) Escrow Holder shall be <u>Fidelity Title Company</u>                                            .
(c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.
(2) (a) ☐ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 13E <u>50/ 50</u>                    .
(b) Owner's title policy to be issued by <u>Fidelity Title Company</u>                                            .
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
(1) ☒ Buyer ☒ Seller shall pay County transfer tax or fee <u>50/50</u>                                        .
(2) ☒ Buyer ☒ Seller shall pay City transfer tax or fee <u>50/50</u>                                        .
(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee                        .
(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
(6) Buyer to pay for any HOA certification fee.
(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee                                        .
(8) ☐ Buyer ☐ Seller shall pay for                                                        .
(9) ☐ Buyer ☐ Seller shall pay for                                                        .
(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____ .
Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
OR ☒ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
**B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed.
(1) All EXISTING fixtures and fittings that are attached to the Property;
(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☒ all stove(s), except _____ ; ☒ all refrigerator(s) except _____ ; ☒ all washer(s) and dryer(s), except _____ .
(3) The following additional items: _____ .
(4) Existing integrated phone and home automation systems, including necessary components such as intranet and internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ☐ are NOT) included in the sale.
(5) LEASED OR LIENED ITEMS AND SYSTEMS: Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
(6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and ____ , and (ii) are transferred without Seller warranty regardless of value.
**C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____ . _____ .
_____ . Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

Buyer's Initials ( /XX ) ( ____ )          Seller's Initials ( SB ) ( ____ )

RPA-CA REVISED 12/15 (PAGE 3 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 3 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          000 Mattole Rd

Property Address: 26000 Mattole Rd, Petrolia , CA  95536       Date: January 22, 2018

**9.  CLOSING AND POSSESSION:**

A.  Buyer Intends (or☐does not Intend) to occupy the Property as Buyer's primary residence.

B.  Seller-occupied or vacant property: Possession shall be delivered to Buyer: (I) at 6 PM or (_____☐AM/☐ PM) on the date of Close Of Escrow; (II)☐no later than ___ calendar days after Close Of Escrow; or (III)☐at _____☐AM/☐PM on _____.

C.  Seller remaining in possession After Close Of Escrow:  If Seller has the right to remain in possession after Close Of Escrow. (I) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (II) the Parties are advised to consult with their insurance and legal advisors for Information about liability and damage or injury to persons and personal and real property; and (III) Buyer is advised to consult with Buyer's lender about the Impact of Seller's occupancy on Buyer's loan.

D.  Tenant-occupied property: Property shall be vacant at least 6 (or ___ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR☐ Tenant in possession (C.A.R. Form TIP).

E.  At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F.  At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and Intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**10. STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A.  (1)  Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (I) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (II) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2)  Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Listing Agent, if any, has completed and signed the Listing Broker section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID).  Nothing stated herein relieves a Buyer's Broker, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Broker.

(3)  Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4)  Within the time specified in paragraph 14A, (I) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (II) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5)  Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6)  In the event Seller or Listing Broker, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

(7)  If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After Delivery in person, or 5 Days After Delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent.

B.  NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (I) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; (II) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (III) disclose any other zone as required by Law and provide any other Information required for those zones.

C.  WITHHOLDING TAXES: Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D.  MEGAN'S LAW DATABASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, Information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further Information, Broker recommends that Buyer obtain Information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E.  NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES: This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further Information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact Information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:

(1) SELLER HAS: 7 (or ___ ) Days After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( _____ ) ( _____ )         Seller's Initials ( JVS )( _____ )

RPA-CA REVISED 12/15 (PAGE 4 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      000 Mattole Rd

Property Address: 26000 Mattole Rd, Petrolia , CA  95536      Date: _January 22, 2018_

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or    ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**11. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

    A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by Law.

    B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.

    C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property Improvements may not be built according to code, in compliance with current Law, or have had permits issued.

**12. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**

    A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations") including, but not limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.

    B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.

    C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

    D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**13. TITLE AND VESTING:**

    A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

    B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

    C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    D. At Close of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials (     )(     )        Seller's Initials (     )(     )



RPA-CA REVISED 12/15 (PAGE 5 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     000 Mattole Rd

Property Address: 26000 Mellillo Rd, Padulla , CA  90056                                                    Date: January 11, 2016

E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

A. **SELLER HAS: 7 (or ____ ) Days After Acceptance to Deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.**

B. (1) **BUYER HAS: 17 (or ____ ) Days After Acceptance, unless otherwise agreed in writing, to: (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.**

(2) Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

(3) By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or ____ ) Days After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).

(5) **Access to Property:** Buyer shall have access to the Property to conduct inspections and investigations for 17 (or ____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐**REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

D. **SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or ____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to: (i) the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during the escrow process. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

Buyer's Initials ( _____ )( _____ )                                        Seller's Initials ( _____ )( _____ )

**RPA-CA REVISED 12/15 (PAGE 6 OF 10)**

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   000 Mellillo Rd

Property Address: <u>26000 Mattole Rd, Petrolia , CA 95536</u>                    Date: <u>*January 22, 2018*</u>

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or [ ]___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

16. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

19. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

20. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will execute Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or <u>*Title Company to do escrow instructions*</u> ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( ___ ) ( ___ )                    Seller's Initials ( *JPA* ) ( ___ )   
RPA-CA REVISED 12/15 (PAGE 7 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    000 Mattole Rd

18

Property Address: **26000 Mattole Rd, Petrolia , CA  95536**      Date: *January 22, 2018*

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller Irrevocably assign to Brokers compensation specified in paragraph 18A, and Irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation Instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) If Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) If Buyer and Seller instruct Escrow Holder to cancel escrow.

E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

**21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release Instructions from both Buyer and Seller, judicial decision or arbitration award. **AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials _____ / _____      Seller's Initials _____ / _____

**22. DISPUTE RESOLUTION:**

A. MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

B. ARBITRATION OF DISPUTES:

The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.

"**NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.**"

"**WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION.**"

Buyer's Initials _____ / _____      Seller's Initials _____ / _____

C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:

(1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( ___ )( ___ )      Seller's Initials ( _TB_ )( ___ )

RPA-CA REVISED 12/15 (PAGE 8 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 8 OF 10)**

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      000 Mattole Rd

Property Address: <u>26000 Mattole Rd, Petrolia , CA 95536</u> _____ Date: <u>January 22, 2018</u>

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

**23. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**24. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

**25. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

**26. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

**27. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**28. TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initiated by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**29. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

**30. DEFINITIONS:** As used in this Agreement:
    **A.** "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    **B.** "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
    **C.** "C.A.R. Form" means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    **D.** "Close Of Escrow", including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
    **E.** "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    **F.** "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    **G.** "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    **H.** "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    **I.** "Delivered", "Delivery" or "Deliver", unless otherwise specified in writing, means and shall be effective upon personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
    **J.** "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    **K.** "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    **L.** "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    **M.** "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**31. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 6:00 PM on the third Day after this offer is signed by Buyer (or by [ ] _____ [ ] AM/ [ ] PM, on _____ (date)).

[ ] One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date <u>1/25/18</u>  BUYER _____

(Print name) <u>Ocean Ranch LPFN LLC</u> _____

Date _____  BUYER _____

(Print name) _____

[ ] Additional Signature Addendum attached (C.A.R. Form ASA).          Seller's Initials ( X ) ( _____ )

RPA-CA REVISED 12/15 (PAGE 9 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 9 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          000 Mattole Rd

20

Property Address: <u>26000 Mattole Rd, Petrolia , CA  95536</u>                         Date: <u>January 22, 2018</u>

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. ~~Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.~~

☐ (If checked) SELLER'S ACCEPTANCE IS SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:
_____

☑ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date <u>1 23 18</u> SELLER <u>Joseph Pores Blanchard</u> _____
**(Print name)** Lost Coast Ranch Inc

Date <u>1/23/18</u> SELLER <u>JOSEPH FIORES - BEAUCHAMP</u> _____
**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(____/____)  (Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
(Initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
             ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
             Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation
             is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that
             Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
**A.** Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
**B.** Agency relationships are confirmed as stated in paragraph 2.
**C.** If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
**D. COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _Madrone Realty_ _____ CalBRE Lic. # _01046373_ _____
By _____ _Somer Wallan_ CalBRE Lic. # _01976096_ _____ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address _867 Redwood Drive Suite C_ _____ City _Garberville_ _____ State _CA_  Zip _95542_
Telephone _(707)923-2119_ _____ Fax _____ E-mail _somer@madronerealty.com_
Real Estate Broker (Listing Firm) _____ CalBRE Lic. # _01046373_ _____
By _____ _Jim Redd_ CalBRE Lic. # _00685810_ _____ Date _____
By _____ CalBRE Lic. # _____ Date _____
Address _331 Harris St_ _____ City _Eureka_ _____ State _CA_  Zip _95503-4327_
Telephone _____ Fax _____ E-mail _____

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 29 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** (_____)(_____) Listing Broker presented this offer to Seller on _____ (date).
                          Broker or Designee Initials

**REJECTION OF OFFER:** (_____)(_____) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                        Seller's Initials

©1991- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:                    Buyer Acknowledges that page 10 is part of this Agreement ( _____)( _____)
REAL ESTATE BUSINESS SERVICES, INC.                                                      Buyer's Initials
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
• 525 South Virgil Avenue, Los Angeles, California 90020

RPA-CA REVISED 12/15 (PAGE 10 of 10)          Reviewed by _____
                                             Broker or Designee

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT  (RPA-CA PAGE 10 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          000 Mattole Rd

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address: **26000 Mattole Rd, Petrolia , CA  95536** _____ ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2.  BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3.  YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  **A.  GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  **B.  SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  **C.  WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  **D.  SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  **E.  WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS;WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  **F.  ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  **G.  EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  **H.  FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  **I.  BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  **J.  RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  **K.  SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  **L.  NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

Buyer _____   Buyer _____
    *Ocean Ranch LPFN, LLC*

© 1991-2014, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
**REAL ESTATE BUSINESS SERVICES, INC.**
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BIA REVISED 11/14 (PAGE 1 OF 1)

| Reviewed by _____ Date _____ |



## BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542    Phone: (707)923-2149    Fax:                     600 Mattole Rd
Seuer Wallen                        Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/16)

No. *1*

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,

dated _____, on property known as _____ 26000 Mattole Rd _____

Petrolia , CA 95536

in which _____ Ocean Ranch LPFN, LLC _____ is referred to as ("Buyer/Tenant")

and _____ Lost Coast Ranch Inc _____ is referred to as ("Seller/Landlord").

**Additional Terms Include:**

1.    Seller to receive all proceeds from loan to buyer, net of fees and expenses. Gross Loan to buyer to be $5.5M. Loan net of fees expected to be 5,280,000.

2.    Seller's expected uses of proceeds set forth in the below chart.

3.    "Balance to Pay Seller" shown in the below chart, but subject to change depending on amount of loan net of fees, to be paid in 24 equal monthly payments beginning 1 month from closing date.

4. $400,0000 paid to Wells Fargo will be released from escrow 1/23/18

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date ___1/25/18___

Buyer/Tenant _____
Ocean Ranch LPFN, LLC

Buyer/Tenant _____

Date ___1.23.18___

Seller/Landlord ___Joseph Flores - Beauchamp___
Lost Coast Ranch Inc

Seller/Landlord _____

© 1998-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542.                    Phone: (707)923-2119    Fax:                    000 Mattole Rd
Samer Wallan                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

### ADDENDUM

**(C.A.R. Form ADM, Revised 12/16).**

No. *2*

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease
or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right
to rescind), ☐ Other _____
dated _____ , on property known as _____ 26000 Mattole Rd _____
_____ Petrolia , CA 95536 _____
in which _____ Ocean Ranch LPFN, LLC _____ is referred to as ("Buyer/Tenant")
and _____ Lost Coast Ranch Inc _____ is referred to as ("Seller/Landlord").

**1.**    **The $100K shown in the chart is for Seller's Broker, Buyer's Broker fee to be Buyer's responsibility.**
**2.**    **The balance to pay spread across 24 months will be recorded as a zero interest loan with a trust deed and personal**
**guarantee from Ben Shaoul.**

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date  *1/25/18*                                              Date  *1 .23 .18*
Buyer/Tenant _____                         Seller/Landlord _____
          *Ocean Ranch LPFN, LLC*                                      *Lost Coast Ranch Inc*
Buyer/Tenant _____                         Seller/Landlord _____

© 1996-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of
this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify
the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS®
who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |
|---|

ADM REVISED 12/15 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542                Phone: (707)923-2119        Fax                000 Mattole Rd
Sener Wallan                                  Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## ADDENDUM

**(C.A.R. Form ADM, Revised 12/15)**

No. _3_____

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____
dated _____, on property known as _____ 26000 Mattole Rd _____
_____ Petrolia , CA  95536 _____
in which _____ Ocean Ranch LPFN, LLC _____ is referred to as ("Buyer/Tenant")
and _____ Lost Coast Ranch Inc _____ is referred to as ("Seller/Landlord").

*Sellers, Seller's agent and professional expediters are to continue assisting the buyers with the process of getting the necessary permits for all the cannabis cultivation permits. They will immediately hand over all the paperwork and anything else pertaining to this matter and supply information regarding contact phone numbers, email addresses etc.*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date __1/25/18__            Date __1 23 .18__

Buyer/Tenant _____            Seller/Landlord _____
Ocean Ranch LPFN, LLC                 Lost Coast Ranch Inc

Buyer/Tenant _____            Seller/Landlord _____

© 1998-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ |

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542                Phone: (707)923-3119          Fax                000 Mattole Rd
Somer Wallan                                    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

No. 4 _____

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential
or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer
to rescind). ☐ Other _____

dated _____, on property known as _____   26000 Mattole Rd
_____   Petrolia , CA  95536

in which   Ocean Ranch LPFN, LLC   is referred to as ("Buyer/Tenant")
and   Lost Coast Ranch Inc   is referred to as ("Seller/Landlord")

:

1.      Close of Escrow shall be adjourned to on or about January 31, 2018.
2.      Buyer will deliver $385,495.91 to Wells Fargo ("Wells Fargo Payment") per instructions delivered by Seller in
satisfaction of the payment described as the "Wells Fargo Current Payment" on the chart annexed to Addendum 1, on or
about January 25, 2018. Seller acknowledges that the Wells Fargo Payment is being made on behalf of Seller and shall be
credited toward the Initial Deposit. The balance of the Initial Deposit in the amount of $1,871,853.09 shall be held by Escrow
Holder pursuant to this Agreement.
3.      Any reference to "Fidelity Title Company" in the Agreement shall be amended to include "and/or Orange Coast
Title Company."
4.      Addendum 1, Item 4 is hearby deleted

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date  1/25/18                               Date  1-24-18

Buyer/Tenant _____                        Seller/Landlord _____
Ocean Ranch LPFN, LLC                      Lost Coast Ranch Inc

Buyer/Tenant _____                        Seller/Landlord _____

© 1996-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of
this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY
OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE
TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify
the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS®
who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

ADM REVISED 12/15 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

## DISCLOSURE REGARDING
## REAL ESTATE AGENCY RELATIONSHIP
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
**To the Seller:** A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
**To the Buyer and the Seller:**
    (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)A duty of honest and fair dealing and good faith.
    (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
**To the Buyer:** A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
**To the Buyer and the Seller:**
    (a)Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)A duty of honest and fair dealing and good faith.
    (c)A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _Ocean Ranch LPFH, LLC_____ Date _1/25/18_

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____*Madrone Realty*_____ BRE Lic. # _01046373_
                  Real Estate Broker (Firm)
By _____ BRE Lic. # _01975096_____ Date _____
    (Salesperson or Broker-Associate)     *Somer Wellan*

| Agency Disclosure Compliance (Civil Code §2079.14): |
| --- |
| • When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant. |
| • When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here: |

_Joseph Geers - Blanchamp_____
Seller/Landlord                Date        Seller/Landlord                Date
*Lost Coast Ranch Inc*

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
**AD REVISED 12/14 (PAGE 1 OF 2)**

| Reviewed by ____ Date ____ | |
| --- | --- |

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Madrone Real Estate, 847 Redwood Dr. Garberville, CA 95542        Phone: (707)923-2119     Fax:        000 Mattole Rd
Somer Wellan                Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

27

CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owns a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sale," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
(c)  The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____ is the agent of (check one): □ the seller exclusively; or □ both the buyer and seller.
(DO NOT COMPLETE. SAMPLE ONLY)
(Name of Listing Agent)

_____ is the agent of (check one): □ the buyer exclusively; or □ the seller exclusively; or
(DO NOT COMPLETE. SAMPLE ONLY)                                     □ both the buyer and seller.
(Name of Selling Agent if not the same as the Listing Agent)

(d)  The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.
**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.
**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by | Date |
|---|---|



AD REVISED 12/14 (PAGE 2 OF 2)
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    000 Mateis Rd



**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: (a) Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; (b) Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and (c) other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

Seller and/or Buyer acknowledges reading and understanding this **Possible Representation of More Than One Buyer or Seller - Disclosure and Consent** and agrees to the agency possibilities disclosed.

| | | |
|---|---|---|
| Seller _Joseph Figros-Beauchamp_ | Lost Coast Ranch Inc Date | _1.25.18_ |
| Seller _____ | Date | _____ |
| Buyer _____ | Ocean Ranch LPFN, LLC Date | _1/25/18_ |
| Buyer _____ | Date | _____ |
| Real Estate Broker (Firm) _____ | CalBRE Lic # 01046373 Date | _____ |
| By _____ Jim Redd | CalBRE Lic # 00665810 Date | _____ |
| Real Estate Broker (Firm) _Madrone Realty_ | CalBRE Lic # 01046373 Date | _____ |
| By _____ Somer Wallan | CalBRE Lic # 01975096 Date | _____ |

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ Date _____ | |
|---|---|



**PRBS 11/14 (PAGE 1 OF 1)**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542    Phone: (707)923-2119    Fax:    000 Metaler Rd
Somer Wallan    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**WIRE FRAUD ADVISORY**
(C.A.R. Form WFA, 6/16)

Property Address: _26000 Mattole Rd, Petrolia , CA  95536_ ("Property").

**WIRE FRAUD ADVISORY:**

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring funds is a welcome convenience, buyers and sellers need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed wire transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring instructions. In those cases, the buyers called the number provided, to confirm the instructions, and then unwittingly authorized a transfer to somewhere other than escrow. Sellers have also had their sales proceeds taken through similar schemes.

~~ACCORDINGLY, BUYERS AND SELLERS ARE ADVISED.~~

1. Obtain the phone number of the Escrow Officer at the beginning of the transaction.
2. **DO NOT EVER WIRE FUNDS PRIOR TO CALLING YOUR ESCROW OFFICER TO CONFIRM WIRE INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number included in the emailed wire transfer instructions.**
3. Orally confirm the wire transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.
4. Avoid sending personal information in emails or texts.  Provide such information in person or over the telephone directly to the Escrow Officer.
5. Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.

If you believe you have received questionable or suspicious wire instructions, immediately notify your bank, the Escrow Holder and your real estate agent. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

**By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud Advisory.**

Buyer _____   _Ocean Ranch LPFN, LLC_ Date _1/25/18_

Buyer _____   Date _____

Seller _____   _Lost Coast Ranch Inc_ Date _____

Seller _____   Date _____

© 2016, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from C.A.R. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
. 525 South Virgil Avenue, Los Angeles, California 90020

| Reviewed by _____ |



**WFA 6/16 (PAGE 1 OF 1)**

**WIRE FRAUD ADVISORY (WFA PAGE 1 OF 1)**

Madrone Real Estate, 867 Redwood Dr. Garberville, CA 95542                          Phone: (707)923-3119          Fax:          000 Mattole Rd
Senter Walton                          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

| Palisades Property | Uses | Sources |
|---|---|---|
| American AgCredit (A) (Approximate) | $ 1,304,614 | |
| American AgCredit (B) (Approximate) | $ 232,757 | |
| Besson & Oneill (Approximate) | $ 976,912 | |
| Olympia | $ 4,098,066 | |
| Wells Fargo Current Payment (Approximate) | $ 400,000 | |
| Broker | $ 100,000 | |
| Expected closing Costs (Anticipated) | $ 75,000 | |
| Seller Cash Out | $ 350,000 | |
| Loan to Buyer | | $ 5,500,000 |
| Underwriting Fee (4%) (Anticipated) | | $ (220,000) |
| Buyer Cash | | $ 2,257,349 |
| Total | $ 7,537,349 | $ 7,537,349 |
| Total Purchase Price | $ 9,000,000 | |
| Balance to Pay Seller | | $ 1,462,651 |

Order No. 140-1929927-66



# Orange Coast Title Company

3536 Concours Drive, Suite 120
Ontario, CA 91764
909-987-5433

## PRELIMINARY REPORT

Orange Coast Title Company
3536 Concours Suite 120
Ontario, CA 91764

| | | | |
|---|---|---|---|
| **Attention:** | Claudia Holcomb | **Your no.:** | 1929927-CH |
| **Property address:** | See Attached "Property Exhibit" | **Order no.:** | 140-1929927-66 |

**Dated:**　　　　　January 29, 2018

In response to the above referenced application for a policy of title insurance, **Orange Coast Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit B attached. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit B. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit B of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters, which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

Dated as of January 12, 2018 at 7:30 AM

*Helen Johnson*

Helen Johnson, Title Officer
Ph: 909-987-5433
Email: helenj@octitle.com

Page 1

Order No. 140-1929927-66

**The form of policy of title insurance contemplated by this report is:**

C.L.T.A. Standard Coverage Policy - 1990 (Owner's Policy or Joint Protection)  A.L.T.A. Loan Policy (06-17-06) with A.L.T.A. Endorsement - Form 1 Coverage

  See attached disclosure.

## Schedule "A"

**The estate or interest in the land hereinafter described or referred to covered by this report is:**

A Fee

**Title to said estate or interest at the date hereof is vested in:**

 Lost Coast Ranch Inc., a California Corporation

**The land referred to in this report is situated in the County of Humboldt, State of California, and is described as follows:**

Parcel One:  (APN 104-261-007; 104-262-008; 104-271-001; 105-021-012)

Beginning at the Northeast corner of the West half of the Southwest Quarter of Section 29;
thence Southerly along the East line of said West half to the Southeast corner thereof;
thence Westerly along the South line of said West half to a point which is Easterly thereon 11 chains 50 links from the Northwest corner of Section 32;
thence South 55 1/4 degrees West 14 chains to the West line of Section 32;
thence South along the East line of Section 31 to the Southeast corner of the Northeast Quarter of said Section 31;
thence Westerly along the South line of said Northeast Quarter to the Northeast corner of the West half of the Southeast Quarter of Section 31;
thence South 30 rods;
thence West 3/4 of a mile (or 240 rods);
thence North 1815 feet, more or less, to the Southwest corner of the North half of the Northwest Quarter of said Section 31;
thence Easterly along the South line of said North half to the Southeast corner thereof;
thence North along the East line of said North half to the Northeast corner thereof;
thence North along the West line of the Southeast Quarter of Section 30 to the intersection with the center line of the County Road known as Mattole Road, as said road existed in June, 1999;
thence Easterly along the center of said County Road to the intersection with the center of a ravine near the East line of said Section 30;
thence Northeasterly along the center of said ravine to the North line of the West half of the Southwest Quarter of Section 29;
thence Easterly along said North line, 300 feet, more or less, to the Northeast corner of said West half, and the point of beginning.

All of the above being in Township 1 South, Range 2 West, Humboldt Meridian.

Parcel Two:  (APN 104-262-007)

The South half of the Northeast Quarter, Lot 2, the fractional South half (being Lots 3, 4, and 5) and the East half of the Southeast Quarter of Section 36, Township 1 South, Range 3 West, Humboldt Meridian.
Excepting therefrom that portion thereof conveyed by Charges S. Cook to Charles Clark by Deed dated May 20, 1871, recorded in Book 1 of Deeds, Page 533, Records of said County, and described as follows:

Page 2

Order No. 140-1929927-66

Beginning at the Southeast corner of said Section 36; thence North 130 rods;
thence at right angles West to the bed of a ravine;
thence down the channel or bed of said ravine in a Southwesterly direction to the ocean beach;
thence Southerly along said ocean beach to the South line of said Section 36; thence East to the point of beginning.

Parcel Three:  (APN 104-262-006 and 104-262-009)

The North half of the Northwest Quarter of Section 31, Township 1 South, Range 2 West1 Humboldt Meridian.
The North half of the Northeast Quarter and Lot 1 of Section 36, Township 1 South, Range 3 West, Humboldt Meridian.

Excepting therefrom the Northeast Quarter of the Northeast Quarter of said Section 36, 1/16 of all coal, oil, gas and other minerals deposits contained in said land, as reserved in Patent from the State of California to F.A. McKee, recorded November 13, 1925 in Book 24 of Patents, Page 21, Humboldt County Records.

Also excepting therefrom the Northeast Quarter of the Northeast Quarter of said Section 36, all oil and gas as reserved in Deed from F.A. McKee, recorded July 13, 1925 in Book 172 of Deeds, Page 264, Humboldt County Records.

Assessor's Parcel Numbers(s):
1: 104-261-007
2: 104-262-008
3: 104-271-001
4: 105-021-012
5: 104-262-007
6: 104-262-006
7: 104-262-009

Order No. 140-1929927-66

## Schedule "B"

**At the date hereof exceptions to coverage in addition to the printed exceptions and exclusions contained in said policy form would be as follows:**

1    General and Special taxes for the fiscal year 2018-2019, including any assessments collected with taxes.  A lien not yet payable.

First installment due and payable November 1, 2018, delinquent if not paid by 12/10/18
Second installment due and payable February 1, 2019, delinquent if not paid by 4/10/19

2    General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$13,304.29** |
| 1st installment | **$6,972.72**, delinquent |
| Penalty | **$633.15** (after 12/11/2017) |
| 2nd installment | **$6,331.57**, open |
| Penalty | **$653.15** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **104-261-007-000** |
| Exemption | $none |

The above taxes cover Parcel 1.

3    General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$5,545.17** |
| 1st installment | **$2,908.42**, delinquent |
| Penalty | **$263.67** (after 12/11/2017) |
| 2nd installment | **$2,636.75**, open |
| Penalty | **$283.67** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **104-262-008-000** |
| Exemption | $none |

The above taxes cover Parcel 1.

4    General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$132.27** |
| 1st installment | **$73.09**, delinquent |
| Penalty | **$5.91** (after 12/11/2017) |
| 2nd installment | **$59.18**, open |
| Penalty | **$25.91** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **104-271-001-000** |
| Exemption | $none |

The above taxes cover Parcel 1.

5    General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$2,496.16** |
| 1st installment | **$1,311.32**, delinquent |
| Penalty | **$118.48** (after 12/11/2017) |
| 2nd installment | **$1,184.84**, open |
| Penalty | **$138.48** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **105-021-012-000** |
| Exemption | $none |

The above taxes cover Parcel 1.

Page 4

Order No. 140-1929927-66

6     General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$9,810.25** |
| 1st installment | **$5,142.51**, delinquent |
| Penalty | **$466.77** (after 12/11/2017) |
| 2nd installment | **$4,667.74**, open |
| Penalty | **$486.77** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **104-262-007-000** |
| Exemption | $none |

The above taxes cover Parcel 2.

7     General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$4,081.47** |
| 1st installment | **$2,141.72**, delinquent |
| Penalty | **$193.97** (after 12/11/2017) |
| 2nd installment | **$1,939.75**, open |
| Penalty | **$213.97** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **104-262-006-000** |
| Exemption | $none |

The above taxes cover Parcel 3.

8     General and Special taxes for the fiscal year 2017-2018, including any assessments collected with current taxes.

| | |
|---|---|
| Total amount | **$89.96** |
| 1st installment | **$50.93**, delinquent |
| Penalty | **$3.90** (after 4/10/2018) |
| 2nd installment | **$39.03**, open |
| Penalty | **$23.90** (after 4/10/2018) |
| Code area | 112000 |
| Parcel No. | **104-262-009-000** |
| Exemption | $none |

The above taxes cover Parcel 3.

9     The Lien of future supplemental taxes, if any, assessed pursuant to the provisions of section 75, et seq of the revenue and taxation code of the state of California

10    Based on the intended use of the subject property, the company may require a copy of the specific use permit, resolution or exemption issued by the appropriate municipality prior to the closing of escrow.

11    Any adverse claim based upon the assertion that any portion of said land was not tide land subject to disposition by the State of California, or that any portion thereof has ceased to be tide lands by reason of erosion or by reason of having become upland by accretion.

12    Any rights in favor of public which may exist on said land for access, parking, beach or recreational uses, if said land or portions thereof were at any time used by the public for such purposes.

13    Any adverse claim based upon the assertion that some portion of said land is tide or submerged lands or has been created by artificial means or has accreted to such portions so created.

14    Rights and easements for commerce navigation and fishery in favor of the public, or the federal, state or municipal government.

Page 5

Order No. 140-1929927-66

15    Reservations recited in the patent from the United States, as follows:"Subject to any vested and accrued water rights for
      mining, agricultural, manufacturing or other purposes, and rights to ditches and reservoirs used in connection with such
      water rights as may be recognized and acknowledged by the local customs, laws and decisions of courts, and a right of way
      for ditches or canals constructed by authority of the United States" recorded in Book 24 Page 21, of Patents.

16    An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument
      Recorded:              In Book 71, Page 498 of Deeds
      For:                   utilities and incidental purposes
      Affects:               Portions of Sections 30 and 31

                             The exact location and extent of said easement is not disclosed of record

17    An easement for purposes herein stated, and rights incidental thereto as provided in an instrument
      Recorded:              February 10, 1947, as Instrument No. 1340, of Official Records.
      For :                  public utilities and incidental purposes
      In favor of :          Pacific Gas and Electric Company, a California Corporation
      Affects :              Sections 29 and Sections 30. The location of said easement is set forth therein.

18    An easement for purposes herein stated, and rights incidental thereto as set forth in an instrument
      Recorded:              In Book 720, Page 598 of Official Records
      For:                   ingress egress and incidental purposes
      Affects:               The location of said easement is set forth therein.

19    An easement for purposes herein stated, and rights incidental thereto as provided in an instrument
      Recorded:              August 11, 1983, Book 1710, Page 304, Official Records
      For:                   public highway and incidental purposes
      In favor of:           County of Humbolt
      Affects:               more particularly described in the above mentioned.

      NOTE:                  Reference is made to said document for full particulars.

20    An instrument, upon the terms and conditions contained therein
      Entitled:              Notice of Lot Line Adjustment and Certificate of Subdivision Compliance
      Recorded:              7/14/1999, as Instrument No. 99-20021, Official Records

21    An instrument, upon the terms and conditions contained therein
      Entitled:              Notice of Lot Line Adjustment and Certificate of Subdivision Compliance
      Recorded:              7/14/1999, as Instrument No. 99-20023, Official Records

22    An easement for purposes herein stated, and rights incidental thereto as provided in an instrument
      Recorded:              4/28/2005, as Instrument No. 05-13672, of Official Records.
      For :                  utilities and incidental purposes
      In favor of :          Pacific Gas and Electric Company
      Affects :              The location of said easement is set forth therein.

23    An easement for purposes herein stated, and rights incidental thereto as provided in an instrument
      Recorded:              4/28/2005, as Instrument No. 05-13673, of Official Records.
      For :                  utilities and incidental purposes
      In favor of :          Pacific Gas and Electric Company
      Affects :              The location of said easement is set forth therein.

24    A Deed of Trust to secure the indebtedness of
      Amount:                **$1,550,000.00**
      Trustor:               **Lost Coast Ranch, Inc., a California Corporation**
      Trustee:               American AgCredit, FLCA
      Beneficiary:           American AgCredit, FLCA, a Corporation
      Dated:                 7/22/2009
      Recorded:              **7/30/2009**, as Instrument No. 09-17466, Official Records

Page 6

Order No. 140-1929927-66

25  An instrument entitled "notice of building(s), structure(s) or premises classified as either hazardous, substandard or a nuisance - abatement proceedings" executed by County of Humboldt, recorded 8/30/2011, as Instrument No. 11-18339, Official Records.

For further information contact the Code Enforcement Bureau Inspector listed below:
Contact:      County of Humboldt
              CDS, Planning Division
Phone No.: (707) 268-3729
Address:   3015 H Street
           Eureka, California
Case No.:  Not shown

26  An instrument entitled "notice of building(s), structure(s) or premises classified as either hazardous, substandard or a nuisance - abatement proceedings" executed by County of Humboldt, recorded 12/1/2011, as Instrument No. 11-24719, Official Records.

For further information contact the Code Enforcement Bureau Inspector listed below:
Contact:      County of Humboldt
              Code Enforcement Unit
Phone No.: (707) 476-2429
Address:   Courthouse Bldg. 825 Fifth Street
           Eureka, California  95501
Case No.:  Not shown

27  An instrument entitled "notice of building(s), structure(s) or premises classified as either hazardous, substandard or a nuisance - abatement proceedings" executed by County of Humboldt, recorded 7/24/2012, as Instrument No. 12-19424, Official Records.

For further information contact the Code Enforcement Bureau Inspector listed below:
Contact:      County of Humboldt
              Code Enforcement Unit
Phone No.: (707) 476-2429
Address:   Courthouse Bldg. 825 Fifth Street
           Eureka, California  95501
Case No.:  Not shown

28  A Deed of Trust to secure the indebtedness of
Amount:        **$250,000.00**
Trustor:       **Lost Coast Ranch, Inc., a California Corporation**
Trustee:       American AgCredit PCA
Beneficiary:   American AgCredit, PCA, a Corporation
Dated:         4/30/2013
Recorded:      **5/9/2013**, as Instrument No. 13-10972, Official Records

29  A Deed of Trust to secure the indebtedness of
Amount:        **$300,000.00**
Trustor:       **Lost Coast Ranch, Inc., a California Corporation**
Trustee:       First American Title Insurance Company, a California Corporation
Beneficiary:   Ed O'Neill and W. Toliver Besson
Dated:         2/7/2014
Recorded:      **2/11/2014**, as Instrument No. 14-2696, Official Records

To avoid delays at the time of closing, please submit the original NOTE, Deed of Trust, and the properly executed request for reconveyance to this office, at least one week prior to close of escrow.

Page 7

Order No. 140-1929927-66

30   A Deed of Trust to secure the indebtedness of

| | |
|---|---|
| Amount: | **$3,500,000.00** |
| Trustor: | **Lost Coast Ranch, Inc., a California Corporation** |
| Trustee: | Fidelity National Title Company |
| Beneficiary: | Spring7 Loft, LLC |
| Dated: | 12/12/2015 |
| Recorded: | **12/21/2015**, as Instrument No. <u>15-23637</u>, Official Records |

The beneficial interest under said Deed of Trust was assigned

| | |
|---|---|
| To: | Bobs LLC |
| By Assignment Recorded: | 3/8/2017 as Instrument No. <u>17-4122</u>, Official Records. |

The trustee in said Deed of Trust was substituted by an instrument

| | |
|---|---|
| Recorded: | 7/25/2017 as Instrument No. <u>17-13596</u>, Official Records. |
| New trustee: | Best Alliance Foreclosure and Lien Services Corp. |

Notice of default under the terms of said Deed of Trust was

| | |
|---|---|
| Recorded: | 7/25/2017 as Instrument No. <u>17-13597</u>, Official Records. |

A notice of trustee's sale under the terms of said Deed of Trust was recorded: 11/13/2017 as Instrument No. <u>17-20450</u>, Official Records.

| | |
|---|---|
| Trustee: | Best Alliance Foreclosure and Lien Services Corp. |
| Date of sale: | 12/6/2017 at 10:30 AM |

31   "The right of the vestee named in Schedule A, or his/her predecessors in interest, to cancel, avoid or rescind any deed or mortgage recorded subsequent to the Notice of Default recorded 7/25/2017 as Instrument No. 2017-13597, Official Records, based on California Civil Code Sections 1695 et seq., or 2945 et seq."

32   An Abstract of Judgment

| | |
|---|---|
| Recorded: | 7/3/2017 as Instrument No. <u>17-11952</u> , Official Records. |
| Entered: | 2/5/16 |
| Case no.: | SC123602 Unlimited |
| Court: | Superior Court of California, County of Los Angeles |
| Judicial District: | West District |
| Amount: | $113,955.74 plus interest and costs. |
| In favor of: | Bank of America, N.A., a National Association |
| Against: | **Ronald L. Patterson aka Ronald Patterson aka Ron Patterson, an individual** |

Attorney for judgment creditor or mailing address:

| | |
|---|---|
| Name: | Mary A. Lazaran |
| | Hemar, Rousso & Heald, LLP |
| Address: | 15910 Ventura Blvd., 12th Floor |
| | Encino, CA 91436 |

33   Rights of parties in possession of said land by reason of unrecorded leases, if any.  Please forward said leases for our examination.

34   Any facts, rights, interest or claims which may be shown by an inspection of the land or which may be disclosed by inquiry of persons in possession of said land.

35   Rights of tenant(s) in the land, if any, and rights of all parties claiming by, through or under said tenant(s).

Order No. 140-1929927-66

36   This company will require the following in order to insure title in, or a conveyance or encumbrance from the entity named below.

Name:              Lost Coast Ranch Inc., a California Corporation

(a) A copy of the by-laws or articles of association (sometimes known as the "agreement" or "charter").

(b) A copy of the resolution of the association approving the present transaction and identifying the subject land. The resolution should also state that the transaction is necessary for the business purposes of the association and should name the parties who are authorized to execute documents for the association.

(c) Articles of incorporation

37   Without limiting, modifying, abridging or negating any provision of the Exclusions From Coverage stated in this Policy or any other exception included in this Schedule B, and as a supplement and addition thereto, this Policy does not insure or provide title insurance coverage for or against any and all consequences and effects, legal, equitable, practical or otherwise, civil or criminal, of any violation or alleged violation of any federal, state, county, municipal or local laws, statutes, ordinances or regulations or any actual or threatened action, court order or mandate for the enforcement thereof, relating to or governing the use, processing, manufacture, growth, possession, distribution, sale or any other activity on, about, or relating to or concerning the Land, title thereto or any interest therein, of any controlled or regulated substance, including, without limitation, marijuana, and any component, derivative or product thereof. This policy insures title only; nothing contained in this policy shall be construed to insure the subject premises for any particular use.

38   Any facts, rights, interest or claims which may be shown by an inspection of the land or which may be disclosed by inquiry of persons in possession of said land.

39   Lack of possession by any Insured of the original promissory note secured by the Insured Mortgage.

40   The absence from the original promissory note of a proper endorsement if the Insured named in Schedule A is an assignee of said note.

41   Any claim which arises out of the transaction creating the interest of the Insured by reason of federal or state securities law.

42   Any interest of Broker or Servicer.

43   Taxes or assessments which are not shown as existing liens by the records of taxing authority that levies taxes or assessments on real property or by the public records.

44   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof

45   Easement, claims of easement or encumbrances, which are not shown by the public records

46   Discrepancies, conflicts in boundary lines, shortage of area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

47   Unpatented mining claims; reservations or exceptions in patents or in acts authorizing the issuance thereof; water rights, claims or title to water.

48   Any lien or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not show by the public records.

49   Requirement for copy of the Cannabis use permit and/or county zoning ordinance authorizing Cannabis use.

### End of Schedule B

Order No. 140-1929927-66

## "NOTES AND REQUIREMENTS SECTION"

BUILDER SERVICES

### NOTE NO. 1

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT NOTICE

**This is to give you notice that Orange Coast Title Company owns an interest in Real Advantage Title Insurance Company.  This underwriter may be chosen by Orange Coast Title Company and this referral may provide Orange Coast Title Company a financial or other benefit.**

**You are NOT required to use the listed provider as a condition for settlement of your loan or purchase, sale or refinance of the subject property and you have the opportunity to select any of the Orange Coast Title Company title insurance underwriters for your transaction.  THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES.  YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES**

Notes section continued on next page…

Order No. 140-1929927-66

## NOTE NO. 2

California Revenue and Taxation Code Section 18662, effective January 1, 1994 and by amendment effective January 1, 2003, provides that the buyer in all sales of California Real Estate may be required to withhold 3 and 1/3% of the total sales price as California State Income Tax, subject to the provisions of the law as therein contained.

## NOTE NO. 3 PAYOFF INFORMATION:

Note: this company does require current beneficiary demands prior to closing.
If the demand is expired and a correct demand cannot be obtained, our requirements will be as follows:

A.    If this company accepts a verbal update on the demand, we may hold an amount equal to one monthly mortgage payment. The amount of this hold will be over and above the verbal hold the lender may have stipulated.

B.    If this company cannot obtain a verbal update on the demand, will either pay off the expired demand or wait for the amended demand, at the discretion of the escrow.

C.    In the event that a payoff is being made to a servicing agent for the beneficiary, this company will require a complete copy of the servicing agreement prior to close.

## NOTE NO. 4

If this company is requested to disburse funds in connection with this transaction, chapter 598, statutes of 1989 mandates hold periods for checks deposited to escrow or sub-escrow accounts. The mandatory hold is one business day after the day deposited. Other checks require a hold period from three to seven business days after the day deposited.

### Notice Regarding Your Deposit of Funds

California Insurance Code Sections 12413 *et. Seq.* Regulates the disbursement of escrow and sub-escrow funds by title companies. The law requires that funds be deposited in the title company escrow and sub-escrow accounts and be available for withdrawal prior to disbursement. Funds deposited with the Company by wire transfer may be disbursed upon receipt. Funds deposited with the Company via cashier's checks drawn on a California based bank may be disbursed the next business day after the day of deposit. If funds are deposited with by other methods, recording or disbursement may be delayed. All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow accounts of the Company in a financial institution selected by the Company. The Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and the Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by the Company and/or its parent Company. Those benefits may include, without limitation, credits allowed by such financial institution on loans to the Company and/or its parent company and earnings on investments made on the proceeds of such loans, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of the Company for its services in connection with the escrow or sub-escrow.

Order No. 140-1929927-66



## Orange Coast Title Company

3536 Concours Drive, Suite 120
Ontario, CA 91764
909-987-5433

New Rise Capital
594 Broadway, Suite 1010
New York, NY 10012

**Attention:**      **James Girsdansky**
**Borrower:**

**Lenders supplemental report**

The above numbered report (including any supplements or amendments thereto) is hereby modified and/or supplemented in order to reflect the following additional items relating to the issuance of an American Land Title Association loan policy form as follows:

A.      This report is preparatory to this issuance of an American Land Title Association loan policy of title insurance. This report discloses nothing, which would preclude the issuance of said American land title association loan policy of title insurance with endorsement no. 100 attached thereto.

B.      The improvements on said land are designated as:

   Vacant Land
   1: No Situs, in the City of Ferndale, County of Humboldt, State of California.

   Vacant Land
   2: No Situs, in the City of Ferndale, County of Humboldt, State of California.

   Vacant Land
   3: No Situs, in the City of Ferndale, County of Humboldt, State of California.

   Vacant Land
   4: No Situs, in the City of Ferndale, County of Humboldt, State of California.

   Vacant Land
   5: No Situs, in the City of Ferndale, County of Humboldt, State of California.

   Vacant Land
   6: No Situs, in the City of Ferndale, County of Humboldt, State of California.

   Vacant Land
   7: No Situs, in the City of Ferndale, County of Humboldt, State of California.

C.      Our search of the public records revealed conveyance(s) affecting said land recorded within 24 months of the date of this report are as follows:

   None.

Order No. 140-1929927-66

## Attention

Please note that this preliminary report now has an extra copy of the legal description on a separate sheet of paper. There are no markings on the page. The idea is to provide you with a legal description that can be attached to other documents as needed.  That legal description page immediately follows this page.

Thank you for your support of **Orange Coast Title Company**. We hope that this makes your job a little easier.

Order No. 140-1929927-66

## Exhibit "A"

Parcel One:  (APN 104-261-007; 104-262-008; 104-271-001; 105-021-012)

Beginning at the Northeast corner of the West half of the Southwest Quarter of Section 29;
thence Southerly along the East line of said West half to the Southeast corner thereof;
thence Westerly along the South line of said West half to a point which is Easterly thereon 11 chains 50 links from the Northwest corner of Section 32;
thence South 55 1/4 degrees West 14 chains to the West line of Section 32;
thence South along the East line of Section 31 to the Southeast corner of the Northeast Quarter of said Section 31;
thence Westerly along the South line of said Northeast Quarter to the Northeast corner of the West half of the Southeast Quarter of Section 31;
thence South 30 rods;
thence West 3/4 of a mile (or 240 rods);
thence North 1815 feet, more or less, to the Southwest corner of the North half of the Northwest Quarter of said Section 31;
thence Easterly along the South line of said North half to the Southeast corner thereof;
thence North along the East line of said North half to the Northeast corner thereof;
thence North along the West line of the Southeast Quarter of Section 30 to the intersection with the center line of the County Road known as Mattole Road, as said road existed in June, 1999;
thence Easterly along the center of said County Road to the intersection with the center of a ravine near the East line of said Section 30;
thence Northeasterly along the center of said ravine to the North line of the West half of the Southwest Quarter of Section 29;
thence Easterly along said North line, 300 feet, more or less, to the Northeast corner of said West half, and the point of beginning.

All of the above being in Township 1 South, Range 2 West, Humboldt Meridian.

Parcel Two:  (APN 104-262-007)

The South half of the Northeast Quarter, Lot 2, the fractional South half (being Lots 3, 4, and 5) and the East half of the Southeast Quarter of Section 36, Township 1 South, Range 3 West, Humboldt Meridian.
Excepting therefrom that portion thereof conveyed by Charges S. Cook to Charles Clark by Deed dated May 20, 1871, recorded in Book I of Deeds, Page 533, Records of said County, and described as follows:

Beginning at the Southeast corner of said Section 36; thence North 130 rods;
thence at right angles West to the bed of a ravine;
thence down the channel or bed of said ravine in a Southwesterly direction to the ocean beach;
thence Southerly along said ocean beach to the South line of said Section 36; thence East to the point of beginning.

Parcel Three:  (APN 104-262-006 and 104-262-009)

The North half of the Northwest Quarter of Section 31, Township 1 South, Range 2 West1 Humboldt Meridian.
The North half of the Northeast Quarter and Lot 1 of Section 36, Township 1 South, Range 3 West, Humboldt Meridian.

Excepting therefrom the Northeast Quarter of the Northeast Quarter of said Section 36, 1/16 of all coal, oil, gas and other minerals deposits contained in said land, as reserved in Patent from the State of California to F.A. McKee, recorded November 13, 1925 in Book 24 of Patents, Page 21, Humboldt County Records.

Also excepting therefrom the Northeast Quarter of the Northeast Quarter of said Section 36, all oil and gas as reserved in Deed from F.A. McKee, recorded July 13, 1925 in Book 172 of Deeds, Page 264, Humboldt County Records.

Page 14

Order No. 140-1929927-66

# CLTA Preliminary Report Form – Exhibit B (06-03-11)

## CLTA STANDARD COVERAGE POLICY – 1990
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy. (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters: (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but that could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (02/03/10)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning: a. building, b. zoning, c. land use, d. improvements on the Land, e. land division; and ,f. environmental protection. This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks: a. that are created, allowed, or agreed to by You, whether or not they recorded in the Public Records; b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date; c. that result in no loss to You; or d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e, 25, 26, 27, or 28.
5. Failure to pay value for Your Title.
6. Lack of a right: a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and b. in streets, alleys, or waterways that touch the Land. This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.

### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
• For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.
The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 10,000 |
| Covered Risk 18: | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 19: | 1 % of Policy Amount shown in Schedule A or $ 5,000 (whichever is less) | $ 25,000 |
| Covered Risk 21: | 1 % of Policy Amount shown in Schedule A or $ 2,500 (whichever is less) | $ 5,000 |

## ALTA RESIDENTIAL TITLE INSURANCE POLICY (6-1-87)
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:
1. Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning: * land use * improvements on the land * land division * environmental protection. This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date. This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.
2. The right to take the land by condemning it, unless: *a notice of exercising the right appears in the public records *on the Policy Date *the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking.
3. Title Risks: *that are created, allowed, or agreed to by you *that are known to you, but not to us, on the Policy Date - unless they appeared in the public records *that result in no loss to you *that first affect your title after the Policy Date – this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks.
4. Failure to pay value for your title.
5. Lack of a right: *to any land outside the area specifically described and referred to in Item 3 of Schedule A OR *in streets, alleys, or waterways that touch your land. This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## 2006 ALTA LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1. (a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims or other matters:(a)created, suffered, assumed or agreed to by the Insured Claimant; (b)not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy; (c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14);or(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state in which the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:
1.(a) Any law, ordinance or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

1.(a) Any law, ordinance or governmental regulation that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests or claims which are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5.(a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

## 2006 ALTA OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

Page 15

Order No. 140-1929927-66

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to: (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or (IV) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5. (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters: (a) created, suffered, assumed, or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;(c) resulting in no loss or damage to the Insured Claimant; (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is (a) a fraudulent conveyance or fraudulent transfer; or (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) that arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (07-26-10)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions or location of any improvement erected on the Land; (iii) the subdivision of the land; or (iv) environmental protection; or the effect of any violation of these laws, ordinances or governmental regulations This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(d), 14, and 16.(b) Any governmental police power. This Exclusion 1(b)does not modify or limit the coverage provided under Covered Risks 5, 6, 13(c), 13(b), 14, and 16.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims or other matters (a) created, suffered, assumed or agreed to by the Insured Claimant; (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy.(c) resulting in no loss or damage to the Insured Claimant;(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 26); or (e)resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of the Insured to comply with applicable doing-business laws of the state in which the Land is situated.

5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth in lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is (a) a fraudulent conveyance or fraudulent transfer, or (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.

Order No. 140-1929927-66

# Orange Coast Title Company
## PRIVACY POLICY

## We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

## Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

## Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means.

- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).

- Information about your transactions with us, our Affiliated Companies, or others; and

- Information we receive from a consumer reporting agency.

## Use of Information

We request information from you for our own legitimate business purposes and not for benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

## Former Customers

**Even if you are no longer our customer, our Privacy Policy will continue to apply to you.**

## Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

## Other Important Information

We reserve the right to modify or supplement this Privacy Policy at any time. If our Privacy Policy changes, we will provide the new Privacy Policy before the new policy becomes effective.

Order No. 140-1929927-66

## Property Exhibit

1: No Situs, Ferndale, CA 95536
2: No Situs, Ferndale, CA 95536
3: No Situs, Ferndale, CA 95536
4: No Situs, Ferndale, CA 95536
5: No Situs, Ferndale, CA 95536
6: No Situs, Ferndale, CA 95536
7: No Situs, Ferndale, CA 95536



FRCL SECS 25 & 36 1S,3W FRCL SEC 1 2S,3W, 30 & 31 1S,2W & 6,2S,2W

104-26
T.C.A.
1" = 1200'

104-27

T.C.A.    1" = 600'

FRCL SEC 32, T1S, R2W

THIS MAP SHOULD BE USED FOR REFERENCE PURPOSES ONLY. NO LIABILITY
IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. PARCELS MAY NOT COMPLY
WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.



PTN SECS 29,32 & 33  T1S, R2W & SEC 4  T2S, R2W

PETROLIA FIRE DIST.

105-02

NOTE – Assessor's Block Numbers Shown in Ellipses
Assessor's Parcel Numbers Shown in Circles.

Assessor's Map Bk. 105, Pg.02
County of Humboldt, CA.

**Talin Keshishian**

| | |
|---|---|
| **From:** | Richard Burstein |
| **Sent:** | Monday, April 16, 2018 2:15 PM |
| **To:** | Jim Redd; David Seror |
| **Cc:** | 'Kevin Sullivan'; Talin Keshishian |
| **Subject:** | RE: Sales Brochure |

Thanks, Jim.

**From:** Jim Redd [mailto:jim@ranchagent.com]
**Sent:** Monday, April 16, 2018 2:13 PM
**To:** Richard Burstein <rburstein@bg.law>; David Seror <dseror@bg.law>
**Cc:** 'Joseph Beauchamp' <job@josephbeauchamp.com>; 'Kevin Sullivan' <kevin@ranchagent.com>
**Subject:** RE: Sales Brochure

Richard,

1) There was no deposit on 1/9/2018.
2) The contingencies had not been removed.
3) The cannabis permit was in progress.  Humboldt County is very slow processing those permits.
4) The table at the back of the purchase agreement, I believe, is accurate.
5) Olympia Mortgage had committed to a loan for the buyer.
6) The notice of abatement is due to the homes being built without permits.  The buyer agreed to take that as is subject to the buyer paying any penalties.  The buyer has waived the title contingencies except for the bankruptcy.

Hopefully that helps.

Jim Redd
The Ranch Specialist
www.ranchagent.com
O: 707-444-9234
C: 707-496-3022



**From:** Richard Burstein [mailto:rburstein@bg.law]
**Sent:** Monday, April 16, 2018 1:03 PM
**To:** Jim Redd <jim@ranchagent.com>
**Subject:** RE: Sales Brochure

Hi Jim: the bankruptcy petition was filed 1/9/18 – the "petition date".



1

EXHIBIT "4"

Thanks.

Richard

Richard Burstein, Partner

**Brutzkus Gubner Rozansky Seror Weber LLP**
21650 Oxnard St., Suite 500
Woodland Hills, CA 91367-4911
www.bg.law

(818) 827-9000 Main
(818) 827-9120 Direct
(818) 827-9050 Fax
rburstein@bg.law

The preceding e-mail message is subject to Brutzkus Gubner Rozansky Seror Weber LLP's e-mail policies, which can be found at: http://www.bg.law/disclaimer

**From:** Jim Redd [mailto:jim@ranchagent.com]
**Sent:** Monday, April 16, 2018 12:59 PM
**To:** Richard Burstein <rburstein@bg.law>
**Subject:** RE: Sales Brochure

Richard,

What is the petition date?

Jim Redd
The Ranch Specialist
www.ranchagent.com
O: 707-444-9234
C: 707-496-3022



**From:** Richard Burstein [mailto:rburstein@bg.law]
**Sent:** Monday, April 16, 2018 10:52 AM
**To:** Jim Redd <jim@ranchagent.com>

2

**Cc:** Talin Keshishian <tkeshishian@bg.law>
**Subject:** RE: Sales Brochure

Hi Jim: Thanks.

Perhaps you could help me with some more details.

I have looked at the Purchase Agreement and prelim that you sent me. Could you tell me <u>as of the petition date</u>: 1) was the deposit sum placed into an escrow, if so where? 2) What was the status of contingencies? 3) What was the status of the work on cannabis permitting referred to in the Addendum? 3) What did you consider the loan balances due secured against the property to be? 4) I had the impression that the equity in the property was higher than it seems with a $9m purchase price shown on the purchase agreement...am I wrong? 5) Since the Purchase Agreement states that there is no loan contingency, what is the anticipated source of the balance due at close shown on the Purchase Agreement? 6) You drew my attention in the prelim to hazardous condition notices from the government on the property...what do they entail, did the buyer waive those items in its review of the title...has the title contingency been waived?

Answers to these questions will help us understand the situation. Please note that while this inquiry is essential to the trustee's discharge of his obligations, please do not assume that the trustee will consent to the pending motion to dismiss the case.

Thanks again.

Richard

Richard Burstein, Partner

Brutzkus Gubner Rozansky Seror Weber LLP
21650 Oxnard St., Suite 500
Woodland Hills, CA 91367-4911
www.bg.law

(818) 827-9000 Main
(818) 827-9120 Direct
(818) 827-9050 Fax
rburstein@bg.law

The preceding e-mail message is subject to Brutzkus Gubner Rozansky Seror Weber LLP's e-mail policies, which can be found at: http://www.bg.law/disclaimer

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367**

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S OPPOSITION TO DEBTOR'S MOTION TO DISMISS CASE; DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 18, 2018</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- David I Brownstein    david@brownsteinfirm.com
- Thomas G Mouzes    tmouzes@boutinjones.com, cdomingo@boutinjones.com
- Ronald A Norman    ronaldanorman@sbcglobal.net, david@jshoffmanlaw.com
- David Seror (TR)    mtzeng@brutzkusgubner.com, C133@ecfcbis.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Jennifer C Wong    bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) <u>April 18, 2018</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA Hand Delivery**

Hon. Victoria S. Kaufman
U.S. Bankruptcy Court
21041 Burbank Blvd., #354
Woodland Hills, CA 91367-6603

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 18, 2018 | JESSICA ROEL | /s/ Jessica Roel |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                56

**F 9013-3.1.PROOF.SERVICE**